# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOEL ECHEVARRIA | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 08-1724 |
| | : | |
| LOUIS S. FOLINO, et al. | : | |

## MEMORANDUM

LOWELL A. REED, Jr., Sr. J                                                      November 4 , 2009

Presently before this court is the *pro se* petition for writ of habeas corpus filed by the petitioner Noel Echevarria ("the petitioner") and the response thereto (Doc. Nos. 1 & 14). For the reasons set forth below, the petition will be denied.

**I.**      **PROCEDURAL AND FACTUAL HISTORY**

In its September 20, 2005 opinion, the Superior Court of Pennsylvania recounted the factual findings and procedural history of the trial court as follows:

> On June 5, 2003, the [petitioner], Noel Echevarria, was arrested and charged with murder, conspiracy and Violation of the Uniform Firearms Act (VUFA) in connection with events that occurred on the previous day. On May 19, 2004, the [petitioner] pled not guilty and requested a trial by jury. On May 25, 2004, the jury presided over by [the trial court] returned a verdict of guilty on third degree murder and conspiracy. The [petitioner] was found not guilty of VUFA. On July 29, 2004, the [petitioner] was sentenced to twelve (12) to thirty (30) years for murder and a consecutive sentence of eight (8) to sixteen (16) years for conspiracy. In total, [petitioner] was sentenced to twenty to forty-six (46) years of incarceration.
>
> The facts underlying these convictions are as follows. At 2:31 p.m. on June 4, 2003, Parthenia Drummond flagged down a police officer on the 2100 block of North Franklin Street in North Philadelphia. The officer got out of his vehicle and found a male, with an apparent gun shot injury, lying prone under a black Chevrolet Blazer. The man, later identified as Gideon McCloud, was unresponsive but did have a slight pulse. Officers transported

him to the hospital, but he was later pronounced dead. The medical examiner testified that one of the wounds was consistent with the decedent being shot while on the ground. A nurse at the hospital found what appeared to be crack cocaine in the decedent's pocket, and turned it over to police officers.

Ms. Drummond, who was crying and screaming at the scene, initially told the officer that she had seen two males in black run away after the shooting. Later, after speaking to a grief counselor at the hospital, Ms. Drummond told the officer that she could identify the two men who shot the victim.

At trial, Ms. Drummond explained that she was the victim's girlfriend and the mother of his son. On the afternoon of her boyfriend's death, she was driving past the intersection of Franklin and Diamond, when she saw the decedent and a man named "Pudge" engaged in what looked to be an argument. The decedent was a drug dealer and was selling drugs on the corner of Franklin and Diamond. Ms. Drummond got out of her car in front of her mother's house, and the decedent walked up to her and spoke to her. At the same time, she observed "Pudge" on a pay phone at the corner.

Shortly after she saw Pudge on the phone, Ms. Drummond saw Jamal "Chuck" Williams and the [petitioner], known as "Do-rag", turn the corner from Susquehanna and Diamond and walk toward her and the decedent. Ms. Drummond knew both men; she had gone to school with "Chuck", and the [petitioner] was a distant relative who had once lived at her mother's house. Ms. Drummond had previously seen the [petitioner] selling drugs on the corners of 8th and Diamond, 7th and Diamond, Diamond and Franklin and several other corners in the neighborhood. The [petitioner] had previously told her that he was working for "Chuck".

On that afternoon, "Chuck" was wearing a black leather jacket, blue jeans, and a black hat. The [petitioner] was walking next to him, about one foot away. When they were five feet away, Ms. Drummond saw "Chuck" open his jacket to reveal a large gun strapped to his shoulder. It looked like a "big machine gun", and was 10 to 11 inches long. Suddenly, "Chuck" started firing the gun at the decedent. When the gunfire started, the decedent was in a "state of shock". Ms. Drummond begged "Chuck" to stop shooting

but he did not stop. His only response was to tell her to "shut the F---up and get the F---out of the way." She ran to the other side of the truck parked by the curb, and ducked down until the gunfire subsided.

Although she admitted it was a guess, Ms. Drummond said she heard around 11 shots fired. When she came out from behind the truck, she saw the [petitioner] and "Chuck" running in different directions. She did not see either man with a gun while they were running away. Based on Ms. Drummond's description of the weapon, and the ballistics evidence found at the scene, a firearms expert estimated that "Chuck's" gun was an Intratec Tec-9 nine-millimeter handgun. Ms. Drummond never saw the [petitioner] holding a gun during the entire incident.

The ballistics evidence gathered at the scene indicated that two different guns were fired during the shooting. The police recovered a total of 16 fired cartridge casings -11 casings from a 9-millimeter gun, and 5 casings from a 10-millimeter. They also found six bullets and bullet jackets -one of which was fired from a 10-millimeter gun. Additionally, six bullets were recovered from the victim's body. Four of the bullets were from a 9-millimeter and one bullet was from a 10-millimeter. One of the bullets was from an earlier time when the decedent was shot.

After Ms. Drummond told her story to the police, the officers, acting pursuant to a search warrant, entered a room above a barber shop less than a block away from the crime scene. Their aim was to apprehend "Chuck", but he was not there. However, police did find two men who tried to escape from police. Police also found several photographs of the [petitioner] propped up near the television so that they could be seen. In one photo, the [petitioner] is holding money. In another, he is holding two handguns. At trial, a firearms expert testified that one of the guns in the picture appeared to be capable of firing the 10-millimeter bullet and shell casings that were recovered from the crime scene.

Shantell Jones, a friend of the [petitioner], testified that she spoke to the [petitioner] shortly after the murder when he asked to see her. At trial, she said that the [petitioner] then told her than he had heard the murder was a drive-by shooting. When she first spoke to police, however, she said that the [petitioner] had said he and "Chuck" were speaking to the decedent when a car drove up and shot him.

> Police executed a search warrant at "Chuck's" home on June 5, 2003, but he was not there. They did find a large quantity of drugs, a scale, and a gun magazine. "Chuck" remains at large to this day.[1] The [petitioner] was arrested at his father's house on June 5, 2003.
>
> Prior to the beginning of trial, defense counsel objected to the use of the photograph showing the [petitioner] holding two guns, one of which was consistent with one of the weapons used to shoot the decedent. The basis of this objection was that admission of the photographs was highly prejudicial to the [petitioner]. The court ruled that the photograph of the [petitioner] was admissible under Pennsylvania law.

(Respondents' Brief, Exh. B. (the Superior Court opinion), pgs. 1-4).

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") increased the deference federal courts must give to the factual findings and legal determinations of the state courts.  Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000).  Under 28 U.S.C. § 2254(d), as amended by the AEDPA, the court may grant a petition for habeas corpus only if:  (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Werts, 228 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

---

[1] Jamal "Chuck" Williams was ultimately captured, convicted of first degree murder and related charges, and sentenced to life imprisonment.

In <u>Williams v. Taylor</u>, the United States Supreme Court further interpreted and clarified the AEDPA standards. 529 U.S. 362 (2000). The Court explained that under the "contrary to" clause, the federal court may grant the writ if the state court: (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. <u>Hameen v. State of Del.</u>, 212 F.3d 226, 235 (3d Cir. 2000) (citing <u>Williams</u>, 529 U.S. at 412-13). The Court in <u>Williams</u> also found that under the "unreasonable application" clause, the federal court may grant the writ if the state court: (1) identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case, or (2) either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. <u>Williams</u>, 529 U.S. at 407; <u>Hameen</u> 212, F.3d at 235. Ultimately, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411.

## III.  DISCUSSION

### A.  Petitioner's Claim Regarding the Admissibility of Certain Photographs Is Not Cognizable on Federal Habeas Review

The petitioner first contends that the state courts violated their Rules of Evidence by allowing into evidence two photographs of the petitioner. The first photograph shows the petitioner holding two handguns while the second shows the petitioner holding a large amount of

5

money.[2]  This court may only consider alleged violations of federal law and may not consider claims of state law violations. 28 U.S.C. § 2254(a); Pulley v. Harris, 465 U.S. 37, 41 (1984) (holding that "A federal court may not issue the writ on the basis of a perceived error of state law").  The petitioner's argument, both here and in the state court, fails to invoke an alleged constitutional violation and is instead based entirely on state procedural laws.  As a result, the claim must be dismissed as not cognizable.

    B.    **The Determination of the State Court That the Prosecutor Did Not Commit Misconduct During His Opening Statement Was Not an Objectively Unreasonable Application of United States Supreme Court Precedent.**

The petitioner next contends that the prosecutor made statements in his opening remarks that violated the petitioner's due process rights and, thus, he should have been awarded a new trial.  Specifically, the petitioner alleges that the prosecutor improperly expressed a personal opinion that the petitioner was guilty by stating that "You're going to hear evidence of that, and by the time you're done analyzing the evidence, you're going to realize that that's true. Another thing you're going to realize is you share this courtroom at this point with a cold-blooded murderer." (N.T. 5/19/04, pg. 37, lines 7-12); see Comm. v. Rollins, 738 A.2d 435, 444 (Pa 1999) (holding that prosecutors may not express their personal belief of a defendant's guilt)). Defense counsel quickly objected to this statement and the trial court instructed the jury to disregard it.  (N.T., 5/19/04, pg. 37, lines 13-19).  Both the trial court and the Superior Court

---

    [2] Specifically, the petitioner claims that the photographs should not have been entered into evidence because: the firearms in the photograph were not shown to be connected to the crime at issue; the photographs showed the petitioner allegedly engaging in unrelated criminal behavior; and the photographs were irrelevant because, *inter alia*, the prosecution did not prove that the guns were involved in the crime at issue.  Finally, if the photographs were admissible, the petitioner contends that any probative value that they possessed was outweighed by their prejudicial impact.

addressed these statements and found no prosecutorial misconduct. (Respondents' Brief Exhs. B (the Superior Court opinion), pg. 10; C (the trial court opinion), pgs. 7-9). Specifically, the trial court opined that the jury instruction cured any alleged harm and the Superior Court concluded that the prosecutor did not improperly state his personal belief that the petitioner was guilty, but instead, argued to the jury that they should find him guilty after analyzing the evidence. (Id.).

The relevant inquiry into prosecutorial misconduct is not whether the prosecutor's comments were improper but whether the comments so infected the trial with unfairness as to make the conviction a denial of due process. Darden v. Wainwright, 477 US 168, 181 (1986). Moreover, the alleged harm may be significantly reduced by properly instructing the jury, as juries are presumed to follow their instructions. Richardson v. Marsh, 481 US 200, 206 (1987). It is the petitioner's burden to establish that the rejection by the state courts of this claim was an objectively unreasonable application of U.S. Supreme Court precedent. Woodford v. Viscoitti, 537 US 19, 24 (2002).

After reviewing the record, I conclude that the petitioner has failed to establish that the conclusions of the state courts on this issue amounted to objectively unreasonable applications of U.S. Supreme Court precedent. As noted above, the state courts explained their reasoning and I find that it was reasonable. Although the prosecutor's comments may have been inopportune, they did not infect the trial with unfairness so severe as to deny the petitioner his due process rights, especially in light of the jury instruction to disregard the comments.

    **C.**     **The Determination of the State Courts That the Evidence Was Sufficient to Support the Verdict Was Not an Objectively Unreasonable Application of United States Supreme Court Precedent.**

Finally, the petitioner contends that the state courts should have found that the evidence was insufficient to support the convictions for third-degree murder and conspiracy

7

because there was no direct evidence that he shot the victim. When reviewing a claim that the evidence was insufficient to support the verdict, the court must ask, when "viewing the evidence in the light most favorable to the prosecution, [whether] *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 US 307, 318-19 (1979) (emphasis original).

The state courts addressed the sufficiency of the evidence to support each conviction. Regarding the conspiracy conviction, the state courts found that: (1) an eyewitness saw the petitioner and "Chuck", his fellow drug dealer, confront the victim who was selling drugs in their territory; (2) more than one gun was used in the shooting, one of which was fired by "Chuck"; (3) the petitioner was previously photographed with a weapon that used the same caliber bullet as the other gun used in the shooting; (4) the petitioner gave two varying accounts of the incident to his friend shortly after the shooting; and (5) the petitioner was seen running from the scene shortly thereafter. (Respondants' Brief Exhs. B (the Superior Court opinion), pgs. 14-15; C (the trial court opinion), pgs. 11-12). I conclude, like the state courts before me, that viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of conspiracy[3] beyond a reasonable doubt.

Regarding the third-degree murder conviction, as noted by the Superior Court, using the same factual findings as those set forth above, the record reflects far more than the petitioner's mere presence at the scene of the crime. (Respondents' Brief, Exh. B (the Superior Court Opinion), pg. 15). Viewing the evidence in the light most favorable to the prosecution, a

---

[3] A person may be convicted of criminal conspiracy if he or she entered into an agreement to commit or aid in an unlawful act with another person, with a shared criminal intent, and an overt act was committed in furtherance of the conspiracy. Comm. v. Lambert, 795 A.2d 1010, 1016 (Pa. Super. 2002).

rational trier of fact could have found the essential elements of third-degree murder[4] beyond a reasonable doubt. As noted by the trial court, a reasonable jury could conclude that it was not plausible that one of the two men who confronted the victim used both guns to commit the crime, especially when the evidence showed that the petitioner and "Chuck" were fellow drug dealers and that the victim was selling drugs on their turf. (Respondents' Brief, Exhs. B (the Superior Court opinion), pg. 15; C (the trial court opinion), pg. 12). Because the petitioner has failed to show that no reasonable trier of fact could have found the essential elements of these two crimes beyond a reasonable doubt, his claim must fail.

## IV.  CONCLUSION

After close and objective review of the arguments and evidence, I find that the petitioner's petition for writ of habeas corpus is meritless. The petitioner's claim regarding the two photographs is not a cognizable claim for my review as it does not raise questions of federal law. The state courts' conclusions that the prosecutor's opening comments did not deprive the petitioner of his due process rights and that the evidence was sufficient to support the verdict were not objectively unreasonable applications of United States Supreme Court precedent. Therefore, the petitioner's arguments to the contrary must fail.

Similarly, because Petitioner's claims are both legally and factually meritless, there is no need to conduct an evidentiary hearing nor is there a need to appoint counsel, as neither would change the outcome of this matter. See 28 U.S.C. § 2254(e)(2), 18 U.S.C. § 3006A; see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("an

---

[4] A person may be convicted of third-degree murder where the murder is neither specifically intended nor committed during the perpetration of a felony, but contains the requisite malice aforethought. Comm. v. Gooding, 818 A.2d 546, 550 ( Pa. Super. 2003).

9

evidentiary hearing is not required on issues that can be resolved by reference to the state court record") (citations omitted); see also Campbell v. Vaughn, 209 F.3d 280, 221 (3d Cir. 2000).

        An appropriate order follows.